## IN THE U.S. DISTRICT COURT FOR THE DISTRICT OF MARYLAND
## SOUTHERN DIVISION

EUNICE JONES and                                    *
BARBARA JONES                                       *
25 Capital Heights Blvd.                            *
Capital Heights, Maryland 20743                     *
Prince George's County                              *
                                                    *
On their own Behalf and on Behalf of All Other      *
Consumers Similarly Situated                        *
                                                    *
            Plaintiffs,                             *
                                                    *
            v.                                      *       Case No. 13-3238
                                                    *
POHANKA AUTO NORTH, INC.                            *
4601 ST. BARNABAS ROAD                              *       **CLASS ACTION COMPLAINT**
      MARLOW HEIGHTS, MD 20748                      *       **AND DEMAND FOR JURY**
      SERVE ON:                                     *       **TRIAL**
      JOHN J. POHANKA                               *
      4601 ST. BARNABAS ROAD                        *
      MARLOW HEIGHTS, MD 20748                      *
                                                    *
POHANKA CHEVROLET, INC.                             *
621 NORTH FREDERICK ROAD                            *
GAITHERSBURG, MD 20879                              *
      SERVE ON:                                     *
      JOHN J. POHANKA                               *
      4601 ST. BARNABAS ROAD                        *
      MARLOW HEIGHTS, MD 20748                      *
                                                    *
POHANKA HYUNDAI, INC.                               *
4601 ST. BARNABAS ROAD                              *
MARLOW HEIGHTS, MD 20748                            *
      SERVE ON:                                     *
      JOHN J. POHANKA                               *
      4601 ST. BARNABAS ROAD                        *
      MARLOW HEIGHTS, MD 20748                      *
                                                    *
POHANKA IMPORTS, INC.                               *
4601 ST. BARNABAS ROAD                              *
MARLOW HEIGHTS, MD 20031                            *
      SERVE ON:                                     *
      JOHN P. POHANKA                               *
      4601 ST. BARNABAS ROAD                        *

MARLOW HEIGHTS, MD 20031          *
                                 *
POHANKA MB, INC.                 *
2013 NORTH SALISBURY BOULEVARD   *
SALISBURY, MD 21801              *
        SERVE ON:                *
        SANDRA FITZGERALD        *
        2013 NORTH SALISBURY BOULEVARD*
        SALISBURY, MD 21801      *
                                 *
POHANKA NMH, INC.                *
4608 SAINT BARNABAS ROAD         *
MARLOW HEIGHTS, MD 20748         *
        SERVE ON:                *
        ROBERT E. MCKEW          *
        4608 SAINT BARNABAS ROAD *
        MARLOW HEIGHTS, MD 20748 *
                                 *
POHANKA OF CLARKSVILLE, INC.     *
4601 SAINT BARNABAS ROAD         *
MARLOW HEIGHTS, MD 20748         *
        SERVE ON:                *
        THE CORPORATION TRUST    *
        INCORPORATED             *
        300 EAST LOMBARD STREET  *
        BALTIMORE, MD 21202      *
                                 *
POHANKA OF SALISBURY, INC.       *
4608 SAINT BARNABAS ROAD         *
MARLOW HEIGHTS, MD 20748         *
        SERVE ON:                *
        RICHARD HARRIS           *
        4608 SAINT BARNABAS ROAD *
        MARLOW HEIGHTS, MD 20748 *
                                 *
POHANKA OLDSMOBILE-GMC TRUCK, INC. *
4601 SAINT BARNABAS ROAD         *
MARLOW HEIGHTS, MD 20031         *
        SERVE ON:                *
        JOHN J. POHANKA          *
        4601 SAINT BARNABAS ROAD *
        MARLOW HEIGHTS, MD 20031 *
                                 *
POHANKA SHO, INC.                *
4608 SAINT BARNABAS ROAD         *

MARLOW HEIGHTS, MD 20748                    *
    SERVE ON:                                *
    EDWARD H. KIM                            *
    3 BESTHESDA METRO CENTER                 *
    SUITE #700                               *
    BETHESDA, MD 20814                       *
                                             *
POHANKA TM, INC.                            *
4608 SAINT BARNABAS ROAD                    *
MARLOW HEIGHTS, MD 20748                    *
    SERVE ON:                                *
    RICHARD HARRIS                           *
    4608 SAINT BARNABAS ROAD                 *
    MARLOW HEIGHTS, MD 20748                 *
                                             *
    and                                      *
                                             *
SUNTRUST BANK                               *
303 PEACHTREE STREET, NE                    *
36TH FLOOR                                  *
ATANTA, GA 30308                            *
    SERVE ON:                                *
    CSC-LAWYERS INCORPORATING                *
    SERVICE COMPANY                          *
    7 ST. PAUL STREET, SUITE 1660            *
    BALTIMORE, MD 21202                      *
                                             *
                                             *
    Defendants.                              *
                                             *

*       *       *       *       *       *       *       *       *       *       *       *       *

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Eunice and Barbara Jones ("Named Plaintiffs"), on their own behalf and on behalf of all others similarly situated, by and through their undersigned attorneys, sue Pohanka Auto North, Inc., Pohanka Chevrolet, Inc., Pohanka Hyundai, Inc., Pohanka Imports, Inc., Pohanka MB, Inc., Pohanka NMH, Inc., Pohanka of Clarksville, Inc., Pohanka of Salisbury, Inc., Pohanka Oldsmobile-GMC Truck, Inc., Pohanka SHO, Inc., and Pohanka TM, Inc. (hereinafter collectively referred to as "Defendants" or "Pohanka Automotive Group"), and Suntrust Bank

("Suntrust").

1.        This is a Complaint against the Pohanka Automotive Group and Suntrust for violating and conspiring to violate statutory and common law obligations.

2.        Named Plaintiffs and the Class are persons who entered into expensive so-called "GAP Agreements" when financing their motor vehicle purchases.  The GAP Agreements were represented as "debt cancellation agreements" which Maryland law defines as agreements "between a credit grantor and a borrower which provide[] for cancellation of the remaining loan balance in the event of theft or total destruction of the collateral for the loan after application of the proceeds of any insurance maintained on the collateral for the loan."  However, the GAP Agreements sold to Named Plaintiffs and the Class are phony debt cancellation agreements -- not true debt cancellation agreements.  These GAP Agreements promise benefits that are illusory. Their terms are illegal.  They may not be financed under Maryland's credit statutes.

3.        Since 1941 when Maryland's Retail Installment Sales Act ("RISA") was enacted, the General Assembly has been wary of allowing car dealers to include charges for products of questionable value in credit contracts, recognizing that when interest charges are applied to these costs, considerable damage can be done to the buyer's financial well-being.  The General Assembly structured RISA, and the Credit Grantor Closed End Credit Provisions ("CLEC") enacted in 1983, to allow the financing in credit contracts by which Marylanders financed their vehicle purchases of only those products or services expressly approved by the statutes.  These consumer protection provisions of Maryland's credit statutes have saved Maryland car buyers many millions of dollars over the years.

4.        When the General Assembly amended CLEC to allow the cost of optional debt cancellation agreements to be financed, the legislature set forth particular definitions of

prevailing terms.  By crafting a specific definition, the General Assembly sought to preclude "look alike" products -- such as the phony and predatory GAP Agreements which are the subject of this case, and which are designed to look like true debt cancellation agreements, when they are not.

5.      Maryland law prohibits financing the cost of anything other than true debt cancellation agreements in credit contacts such as those of the Plaintiffs and the Class.  Maryland law also enables Plaintiffs and the Class to seek and recover compensatory damages, statutory penalties and damages, and to obtain declaratory and injunctive relief.  The Defendants' violations of Maryland law have enriched Defendants unfairly at the expense of Maryland borrowers, a practice this suit seeks to rectify and end.

6.      The Defendants conspired among themselves, by agreement and understanding, to engage in the acts which resulted in legal damages to Named Plaintiffs and the Class they represent.

7.      In connection with the activities giving rise to this action, the Defendants acted with malice, intent and knowledge, and with a wanton disregard for the rights of Plaintiffs and other borrowers.

8.      The Pohanka Automotive Group entities associated with one another under the non-incorporated Pohanka Automotive Group umbrella in order to advertise as one entity.  They further agreed to develop and use sales practices and form documents used by each of the Pohanka Defendant dealerships, such as materially identical GAP Agreement forms, and to present themselves to customers and the world at large as one entity.  The Pohanka Defendants are all marketed through a common website, and the Pohanka Defendants deliberately use the moniker "Pohanka Automotive Group" as a way of branding the dealerships and making them

appear as part of a large umbrella entity, one which enjoys "family" ownership characteristics. For example, each of the component corporations is marketed as part of a large, highly legitimate "family" enterprise, one which would certainly abide by Maryland law.

9.      Nevertheless, the Defendants developed and agreed to implement a fraudulent scheme and conspiracy through the Pohanka Automotive Group to market, sell and finance GAP Agreements in a uniform manner (when those GAP Agreements could not be financed under Maryland law) with misleading and fraudulent representations and omissions concerning the nature of the GAP Agreements, and with the specific intent to deceive and defraud Named Plaintiffs and members of the Class.  As a result of this scheme to defraud, the Plaintiffs and members of the Class were injured and damaged.

10.     At all relevant times herein, in connection with the activities giving rise to this action, the Defendants conspired with each other to engage in the various activities set forth herein, agreed to participate in the operation of the conspiracy and scheme to defraud Plaintiffs and other customers, and aided and abetted one another in these activities, all as proscribed by Maryland law.

11.     The Defendants were well aware of their illegal activities in financing the sale of phony GAP Agreements to Plaintiffs and the Class, and collecting interest, costs, fees and other charges on contracts financing the sale of phony GAP Agreements, at the time they undertook those activities.

12.     The illegal financing of phony GAP Agreements is part of Pohanka Automotive Group's overarching, deliberate and unlawful business model of selling and financing vehicles in a manner that violates laws protecting Maryland consumers.  Indeed, the Pohanka Automotive Group has been sued numerous times, and at least two class actions have been certified by

Maryland courts against Pohanka, for its illegal activities in the course of vehicle sales.

13.      For example, in 2012, the Pohanka Automotive Group was sued for engaging in the very same behavior alleged in this Complaint in *Holland v. Pohanka Auto North, Inc.*, Case No. 8:12-cv-02141-DKC (D.Md.).  This Court entered judgment in that case against each of the Pohanka Defendants in the amount of $30,841.92, plus prejudgment interest.

14.      In 2002, in *Hall v. Pohanka Auto North, Inc.*, Case No. CAL-02-17171 (Cir. Ct. P.G. Co.), Pohanka Automotive Group was sued for failing to disclose the prior rental history of a vehicle and engaging in fraudulent and systematic sales of prior daily rentals without such disclosures as required under Maryland law.    Upon information and belief, the *Hall* case was brought to the attention of executives at the Pohanka Automotive Group.   The Pohanka Automotive Group resolved the *Hall* case after a lengthy investigation into its allegations and purported to institute new procedures intended to assure that prior rental use would be properly disclosed in the future.

15.      However, the Pohanka Automotive Group ensured that material facts such as prior rental use would not be disclosed in subsequent sales transactions by failing to effectively implement new procedures or train store personnel.  The Pohanka Automotive Group continued to profit through their illegal activities by selling prior daily rental vehicles without required disclosures after express notice of their violations, as reflected in the subsequent class action case *Jones et al. v. Pohanka Auto North et al.*, Case No. 316574V (Cir. Ct. Montgomery Co.).  In *Jones*, the plaintiffs demonstrated that for the period beginning July 10, 2005 – more than two years after Defendants settled *Hall* and purportedly changed their practices – and ending February 16, 2011, the Pohanka Automotive Group sold more than 2,400 vehicles without properly disclosing, as required under Maryland law, the material fact that the vehicles had

previously been used as short-term rentals.  In the *Jones* case, the Circuit Court for Montgomery County certified the case for class action treatment over the objection of the Pohanka Automotive Group, and then later approved a class-action settlement of that case, but none of the members of the Class proposed in this case released any claims in *Jones* arising from the sale and financing of GAP agreements.  The named Plaintiffs in this case were class representatives in the *Jones* case.

16.     In *McNab v. Pohanka Auto North et al.*, Case No. 349467V (Cir. Ct. Mont. Co.), Pohanka was the subject of yet another class action case challenging its sale of previously repossessed vehicles without the legally required disclosure of that history.  In that case, the court certified a settlement class involving more than 2,500 of Pohanka Automotive Group's transactions.  None of the members of the Class proposed in this case released any claims in *McNab* arising from the sale and financing of GAP agreements.

17.     Pohanka Automotive Group's pattern and practice of deliberately failing to disclose material facts in the course of vehicle sales, as reflected in *Holland*, *Hall*, *Jones*, and *McNab*, extend to its practice of misrepresenting the nature of the so-called "debt cancellation agreements" it has sold and financed in the transactions of Plaintiffs and the Class.

18.     The Pohanka Automotive Group entities are jointly owned, share management personnel and hold themselves out to the general public as one organization.

19.     The Pohanka Automotive Group entities named in this consumer class action acted in concert to pull off and jointly benefitted from this scheme, and conspired with Suntrust to violate Maryland law and deprive Plaintiffs and Class members of their rights.   The Defendants' clear violations of Maryland law have enriched the Defendants unjustly at the expense of hundreds and potentially thousands of Maryland consumers, a practice this suit seeks

to rectify and end.  The Defendants' use of form debt cancellation agreements and vehicle sales contracts, as well as their uniform non-disclosures, make this case particularly suitable for resolution through a class action lawsuit.

### PARTIES

20.      Named Plaintiffs Eunice and Barbara Jones are residents of Prince Georges County, Maryland.   On August 15, 2008, the Joneses purchased and financed a "GAP Agreement" as part of a Maryland credit contract originated by Pohanka Automotive Group. Pohanka Automotive Group assigned and sold this credit contract, which financed the Plaintiffs's purchase of a 2007 Mercedes-Benz, to Defendant Suntrust.

21.      Defendant Pohanka Auto North, Inc. is a Maryland entity whose principal place of business is located at 4601 Saint Barnabas Road, Marlow Heights, Maryland 20748 and is an entity that owns and operates car dealerships and whose subsidiaries own and operate car dealerships located in the state of Maryland.  Pohanka Auto North, Inc. is primarily engaged in selling new and used vehicles to consumers.

22.      Defendant Pohanka Chevrolet, Inc. is a Maryland corporation whose principal place of business is located at 621 North Frederick Road, Gaithersburg, Maryland 20879. Pohanka Chevrolet, Inc. is an entity that owns and operates car dealerships and whose subsidiaries own and operate car dealerships located in the state of Maryland.   Pohanka Chevrolet, Inc. is primarily engaged in selling used vehicles to consumers.

23.      Defendant Pohanka Hyundai, Inc. is a Maryland entity whose principal place of business is located at 4601 Saint Barnabas Road, Marlow Heights, Maryland 20748 is an entity that owns and operates car dealerships and whose subsidiaries own and operate car dealerships located in the state of Maryland.  Pohanka Hyundai, Inc. is primarily engaged in selling new and

used vehicles to consumers.

24.     Defendant Pohanka Imports, Inc. is a Maryland entity whose principal place of business is located at 4601 Saint Barnabas Road, Marlow Heights, Maryland 20031 is an entity that owns and operates car dealerships and whose subsidiaries own and operate car dealerships located in the state of Maryland.  Pohanka Imports, Inc. is primarily engaged in selling new and used vehicles to consumers.

25.     Defendant Pohanka MB, Inc. is a Maryland entity whose principal place of business is located at 2013 North Salisbury Boulevard, Salisbury, Maryland 21801 is an entity that owns and operates car dealerships and whose subsidiaries own and operate car dealerships located in the state of Maryland.  Pohanka MB, Inc. is primarily engaged in selling new and used vehicles to consumers.

26.     Defendant Pohanka NMH, Inc. is a Maryland entity whose principal place of business is located at 4608 Saint Barnabas Road, Marlow Heights, Maryland 20748 is an entity that owns and operates car dealerships and whose subsidiaries own and operate car dealerships located in the state of Maryland.  Pohanka NMH, Inc. is primarily engaged in selling new and used vehicles to consumers.

27.     Defendant Pohanka of Clarksville, Inc. is a Maryland entity whose principal place of business is located at 4601 Saint Barnabas Road, Marlow Heights, Maryland 20748 is an entity that owns and operates car dealerships and whose subsidiaries own and operate car dealerships located in the state of Maryland.  Pohanka of Clarksville, Inc. is primarily engaged in selling used vehicles to consumers.

28.     Defendant Pohanka of Salisbury, Inc. is a Maryland entity whose principal place of business is located at 4608 Saint Barnabas Road, Marlow Heights, Maryland 20748 is an

entity that owns and operates car dealerships and whose subsidiaries own and operate car dealerships located in the state of Maryland. Pohanka of Salisbury, Inc. is primarily engaged in selling new and used vehicles to consumers.

29.        Defendant Pohanka Oldsmobile-GMC Truck, Inc. is a Maryland entity whose principal place of business is located at 4601 Saint Barnabas Road, Marlow Heights, Maryland 20748 is an entity that owns and operates car dealerships and whose subsidiaries own and operate car dealerships located in the state of Maryland. Pohanka Oldsmobile-GMC Truck, Inc. is primarily engaged in selling used vehicles to consumers and is used as a central administrative hub through which the Pohanka Automotive Group shares information, forms, expenses and carries out its scheme to deny consumers disclosures about vehicles known to have been previously repossessed.

30.        Defendant Pohanka SHO, Inc. is a Maryland entity whose principal place of business is located at 4608 Saint Barnabas Road, Marlow Heights, Maryland 20748 is an entity that owns and operates car dealerships and whose subsidiaries own and operate car dealerships located in the state of Maryland. Pohanka SHO, Inc. is primarily engaged in selling new and used vehicles to consumers.

31.        Defendant Pohanka TM, Inc. is a Maryland entity whose principal place of business is located at 4608 Saint Barnabas Road, Marlow Heights, Maryland 20748 is an entity that owns and operates car dealerships and whose subsidiaries own and operate car dealerships located in the state of Maryland. Pohanka TM, Inc. is primarily engaged in selling new and used vehicles to consumers.

32.        Defendant Suntrust is a Georgia entity whose principal place of business is 303 Peachtree Street, NE, 36th Floor, Atlanta, Georgia, 30308. Suntrust regularly purchases and

accepts assignment of retail installment vehicle financing contracts originated by car dealers in Maryland, including the retail installment contracts of Named Plaintiffs and numerous other vehicle purchasers in Maryland.

## JURISDICTION AND VENUE

33.     This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(d), as the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and this is a class action case in which the Named Plaintiffs are citizens of the State of Maryland, and one of the defendants, Defendant Suntrust, is a citizen of a State other than Maryland.

34.     Venue is proper in this Court under 28 U.S.C. § 1391(a), because a substantial part of the events or omissions giving rise to the claims herein occurred, and a substantial part of property that is the subject of the action is situated within this District.

## FACTUAL ALLEGATIONS

35.     On or about August 15, 2008, Named Plaintiffs purchased a used Mercedes-Benz (the "Mercedes") from Pohanka Automotive Group, through the Retail Installment Sale Contract attached hereto as **EXHIBIT 1** (the "Credit Contract"). The Mercedes was purchased and used primarily for personal, household and family purposes.

36.     The Credit Contract affirmatively elects to be governed under Subtitle 10 of Title 12 of the Commercial Law article (i.e., Maryland's Credit Grantor Closed End Credit Provisions - hereinafter "CLEC") (*See* **EXHIBIT 1**, reverse side).

37.     The Credit Contract includes the purchase of an "Optional Debt Cancellation Agreement" for $750.00.

38.     Named Plaintiffs' GAP Agreement is attached hereto as **EXHIBIT 2,** and a brief review of the document demonstrates that it is not a "debt cancellation agreement" as defined

under Maryland law.

39.      In financed vehicle purchase transactions in Maryland, a legitimate debt cancellation agreement must pay the actual remaining loan balance "after application of the proceeds of any insurance maintained on the" vehicle.  Md. Code Ann., Com. L. §§12-601(h), 12-1001(h).  The phony GAP Agreements purchased by Plaintiffs and the Class, however, only agree to relieve the borrower of the obligation to pay the difference between the "Value of the Vehicle" and the amount owed on the financing contract.  The "Value of the Vehicle" is defined in the phony GAP Agreement **either** as the amount the insurance company agrees to pay for the loss of the vehicle, or the "retail" value for the vehicle in the National Auto Dealer's Association official used car guide – whichever is greater (i.e. whichever results in less coverage).  The phony GAP Agreements also provide numerous other exclusions from their "coverage" which are not permitted under Maryland law – such as an exclusion for amounts financed in excess of 150% of the vehicle's retail value, exclusion for losses suffered after repossession, and other exclusions.  Agreements such as the phony GAP Agreements purchased by Plaintiffs and the Class, which allow the remaining loan balance to be modified by something other than the application of the proceeds of insurance, are not debt cancellation agreements that may be financed under Maryland's credit statutes.

40.      Plaintiffs' Credit Contract, including the purchase of the phony GAP Agreement, was assigned to Suntrust, which accepted the Credit Contract and received monthly payments pursuant to that Credit Contract.

41.      If Plaintiffs had purchased and financed a true "debt cancellation agreement" as defined by Maryland's credit statutes – which is how the GAP Agreement was described in writing on the Credit Contract – Plaintiffs would not have had any obligation to make any

payments toward the remaining loan balance on their vehicle loan for the Pacifica after a total loss or theft, after the application of the insurance proceeds.   However, because the GAP Agreement is not a true debt cancellation agreement, it does not relieve them of that potential obligation – but they was still required to pay $750 for it.

42.      Maryland laws that govern the financed sale of vehicles including the sales to Plaintiffs and the putative Class (e.g. CLEC) do not permit the financing of the phony GAP Agreements sold to Plaintiffs and the putative Class, and do not permit the charging or collection of charges for phony GAP Agreements in such transactions. The form GAP Agreement fails to provide the benefits upon which the Maryland legislature insisted before allowing such products to be financed under Maryland's credit statutes, as set forth in  CLEC, §12-1001(h) and §12-1005(c)(1).

43.      The use of the phony GAP Agreements in the transactions of Plaintiffs and the Class deprived Plaintiffs and members of the Class of the benefits Maryland law was intended to secure.  Maryland law does not permit the financing of the phony GAP Agreements in question – or the charging or collection of charges for such phony GAP Agreements - it only permits creditors to finance and charge and collect for true debt cancellation agreements which cancel the outstanding debt remaining on an account. The deceptive and misleading terms of the phony GAP Agreements – which were designed and which operated to ensure that cancellation of the remaining debt would rarely if ever be made in connection with the phony GAP Agreement – swindled Plaintiffs and the Class and enriched the Defendants without providing value to the Plaintiffs or the Class.

44.      The provisions of CLEC that govern the use of debt cancellation agreements – and that permit the financing of true debt cancellation agreements but not the deceptive and

-14-

phony GAP Agreements at issue here - are intended to protect borrowers like the Plaintiffs and the Class, and to ensure that Maryland consumers will not be tricked into financing the cost of valueless products as part of their vehicle purchases.

45.        Absent strict compliance with the terms of CLEC – including the prohibition on financing the phony GAP Agreements at issue here - a Maryland credit grantor is subject to significant liability for actual and statutory damages which Plaintiffs seeks to recover on behalf of herself and the other members of the Class.

46.        Where, as here, a credit grantor finances a phony rather than a true debt cancellation agreement, the credit grantor "may collect only the principal amount of the loan and may not collect any interest, costs, fees, or other charges with respect to the loan."  Md. Code Ann., Com. L. §12-1018(a)(2).  A credit grantor who knowingly violates any provision of the CLEC is liable for statutory damages of three times the interest, costs, fees and other charges collected in excess of that authorized by CLEC.  Md. Code Ann., Com. L. §12-1018(b).  In addition, a credit grantor may not charge or collect charges for a phony GAP contract under Md. Code Ann., Com. Law §12-1005, and any amounts charged or collected for phony GAP contracts must be trebled and refunded to the borrower pursuant to Md. Code Ann., Com. Law §12-1018(a)(2) & (b).

47.        The entities that are part of the Pohanka Automotive Group conspired to regularly sell and finance, and regularly sold and financed the form GAP Agreements which did not constitute true debt cancellation agreements eligible for financing under Maryland's credit statutes in violation of Maryland law for their own financial benefit, and Defendant Suntrust conspired with Pohanka Automotive Group to violate the law by committing the acts described in this Complaint, and profited by, assisted, supported, supplemented, instigated, advised, and

encouraged the efforts of Pohanka Automotive Group to violate the law. Among other things, the Pohanka Automotive Group entities agreed upon form GAP Agreements to sell and finance in the course of vehicle sales transactions across their dealerships, Defendant Suntrust agreed to accept assignment of credit contracts financing the GAP Agreements, and each collected payments on these contracts, even though all of the Defendants knew the content of these GAP Agreements, and further knew that the phony GAP agreements could not lawfully be financed under Maryland law. Each benefitted financially from the financing of these phony GAP agreements.

48.     As a part of its routine business practices in Maryland, Defendant Suntrust regularly accepted assignment of credit contracts financing the sale of phony form GAP Agreements which did not constitute debt cancellation agreements that could be financed under Maryland's credit statutes, from the Pohanka Automotive Group and from other entities. The entities comprising the Pohanka Automotive Group conspired with Suntrust and one another to violate Maryland law by committing the acts described in this Complaint, and profited by, assisted, supported, supplemented, instigated, advised, and encouraged the efforts of one Suntrust to violate the law. Among other things, the Pohanka Automotive Group agreed to assign credit contracts financing the GAP Agreements to Suntrust. Each of the Defendants knowingly profited by and conspired with one another to profit by the sale and financing of debt cancellation agreements each knew could not be financed under credit contracts governed by Maryland law. Each of the Defendants had an independent financial stake in the scheme, and each individual Defendant profited from the scheme through the sale and financing of phony GAP Agreements and/or through the collection of interest and charges in connection with the sale and financing of phony GAP Agreements.

49.     The Defendants' conspiracy is evidenced by numerous transactions in which the Defendants financed illegal GAP Agreements to members of the Class.  For example, in the named Plaintiffs' transaction, the other Pohanka Defendants all conspired in the sale of the phony GAP Agreement.  For example, the Buyer's Order for this transaction, which includes the $750 GAP charge, specifically lists Pohanka Hyundai, Pohanka Isuzu, Pohanka Imports, Pohanka Honda, Saturn of Bowie, Saturn of Marlow Heights, Saturn of Waldorf, and Pohanka Used Cars on these transaction documents.

50.     In the transaction of Cynthia Holland, whose complaint in this Court about her phony GAP Agreement resulted in a judgment entered against the Pohanka Automotive Group entities, the GAP Agreement was financed in the name of Pohanka Isuzu – a non-entity which is neither incorporated nor a registered trade name in Maryland.  Pohanka Isuzu is, instead, a name under which the Pohanka Defendants associate in order to conduct their conspiracy.  This GAP Agreement, for which Pohanka Isuzu charged $650.00, used the same or substantially the same form as the form GAP Agreement sold to the named Plaintiffs.  It only agreed to relieve the borrower of the obligation to pay the difference between the "Value of the Vehicle" and the amount owed on the financing contract.  The "Value of the Vehicle" is defined in the phony GAP Agreement **either** as the amount the insurance company agrees to pay for the loss of the vehicle, or the "retail" value for the vehicle in the National Auto Dealer's Association official used car guide – whichever is greater (i.e. whichever results in less coverage).  The other Pohanka Defendants all conspired in the sale of this phony GAP Agreement.  For example, the Invoice and the Buyer's Order for this transaction, which includes the $650 GAP charge, is in the name of the unincorporated "Pohanka Automotive Group," which includes all the Pohanka Defendants, and the Invoice and Buyer's Order specifically lists Pohanka Oldsmobile, Pohanka

Isuzu, Pohanka Imports, Pohanka Hyundai, Pohanka Saturn of Marlow Heights, and Pohanka Used Cars on these transaction documents.  The car was purchased for sale by, and titled in the name of, Pohanka Auto North, Inc.

51.     In another transaction on or about May 15, 2007, a transaction was financed in the name of Pohanka Isuzu – a non-entity which is neither incorporated nor a registered trade name in Maryland.  Pohanka Isuzu is, instead, a name under which the Pohanka Defendants associate in order to conduct their conspiracy.  In this transaction, a vehicle purchased for sale by, and titled in the name of, Pohanka Auto North, Inc. was financed along with an illegal GAP Agreement.   The   vehicle   financed   was   a   used   2004   Chrysler   Pacifica,   VIN 2C8GF68454R550313.  This GAP Agreement, for which the unincorporated conspiracy of the Pohanka Automotive Group, under the name Pohanka Isuzu, charged $595.00, used the same or substantially the same form as the form GAP Agreement sold to the named Plaintiff.  It only agreed to relieve the borrower of the obligation to pay the difference between the "Value of the Vehicle" and the amount owed on the financing contract.  The "Value of the Vehicle" is defined in the phony GAP Agreement **either** as the amount the insurance company agrees to pay for the loss of the vehicle, or the "retail" value for the vehicle in the National Auto Dealer's Association official used car guide – whichever is greater (i.e. whichever results in less coverage).  The other Pohanka Defendants all conspired in the sale of this phony GAP Agreement.  For example, the Invoice and the Buyer's Order for this transaction, which includes the $595 GAP charge, is in the name of the unincorporated "Pohanka Automotive Group," which includes all the Pohanka Defendants, and the Invoice and Buyer's Order specifically lists Pohanka Oldsmobile, Pohanka Isuzu, Pohanka Imports, Pohanka Hyundai, Pohanka Saturn of Marlow Heights, and Pohanka Used Cars on these transaction documents.   Pohanka sought a purchaser-assignee of the

financing contract for this transaction – including the illegal GAP Agreement - through Defendant Pohanka Hyundai, Inc., which shopped the financing transaction around to finance companies and negotiated the sale and assignment of the contract.

52.     In another transaction on or about May 14, 2010, co-conspirator Defendant Pohanka Imports, Inc. financed an illegal GAP Agreement in the course of the sale and financing of a used 2008 Honda Civic, VIN 2HGFG12638BH500594.  This GAP Agreement, for which Pohanka Imports, Inc. charged $699.00, used the same or substantially the same form as the form GAP Agreement sold to the named Plaintiffs.  It only agreed to relieve the borrower of the obligation to pay the difference between the "Value of the Vehicle" and the amount owed on the financing contract.  The "Value of the Vehicle" is defined in the phony GAP Agreement **either** as the amount the insurance company agrees to pay for the loss of the vehicle, or the "retail" value for the vehicle in the National Auto Dealer's Association official used car guide – whichever is greater (i.e. whichever results in less coverage).  The other Pohanka Defendants all conspired in the sale of this phony GAP Agreement.  For example, the Invoice and the Buyer's Order for this transaction, which includes the $699 GAP charge, is in the name of the unincorporated "Pohanka Automotive Group," which includes all the Pohanka Defendants, and the Invoice and Buyer's Order specifically lists Pohanka Oldsmobile, Pohanka Isuzu, Pohanka Imports, Pohanka Hyundai, Pohanka Saturn of Marlow Heights, and Pohanka Used Cars on these transaction documents.  The car was purchased for sale by, and titled in the name of, Pohanka Auto North, Inc.

53.     In another transaction on or about March 17, 2007, another phony GAP Agreement was financed in the name of the non-incorporated association of the Pohanka Automotive Group under the name Pohanka Isuzu.   In this transaction, a vehicle purchased for

sale by, and titled in the name of, Pohanka Auto North, Inc. was financed along with an illegal GAP Agreement.   The vehicle financed was a used 2005 Chevrolet Impala, VIN 2G1WF52E859380242.   This GAP Agreement, for which the unincorporated conspiracy of the Pohanka Defendants under the name Pohanka Isuzu charged $600.00, used the same or substantially the same form as the form GAP Agreement sold to the named Plaintiffs.   It only agreed to relieve the borrower of the obligation to pay the difference between the "Value of the Vehicle" and the amount owed on the financing contract.   The "Value of the Vehicle" is defined in the phony GAP Agreement **either** as the amount the insurance company agrees to pay for the loss of the vehicle, or the "retail" value for the vehicle in the National Auto Dealer's Association official used car guide – whichever is greater (i.e. whichever results in less coverage).   The other Pohanka Defendants all conspired in the sale of this phony GAP Agreement.   For example, the Invoice and the Buyer's Order for this transaction, which includes the $600 GAP charge, is in the name of the unincorporated "Pohanka Automotive Group," which includes all the Pohanka Defendants, and the Invoice and Buyer's Order specifically lists Pohanka Oldsmobile, Pohanka Isuzu, Pohanka Imports, Pohanka Hyundai, Pohanka Saturn of Marlow Heights, and Pohanka Used Cars on these transaction documents.   The Pohanka Defendants sought a purchaser-assignee of the financing contract for this transaction – including the illegal GAP Agreement - through Defendant Pohanka Hyundai, Inc., which shopped the financing transaction around to finance companies and negotiated the sale and assignment of the contract.

54.        In another transaction on or about November 15, 2007, another phony GAP Agreement was financed in the name of the non-incorporated association of the Pohanka Automotive Group under the name Pohanka Isuzu.   In this transaction, a vehicle purchased for sale by, and titled in the name of, Pohanka Auto North, Inc. was financed along with an illegal

GAP Agreement.    The vehicle financed was a used 2006 Mercury Mountaineer, VIN 4M2EU47E06UJ05331.  This GAP Agreement, for which the unincorporated conspiracy of the Pohanka Defendants under the name Pohanka Isuzu charged $650.00, used the same or substantially the same form as the form GAP Agreement sold to the named Plaintiffs.  It only agreed to relieve the borrower of the obligation to pay the difference between the "Value of the Vehicle" and the amount owed on the financing contract.  The "Value of the Vehicle" is defined in the phony GAP Agreement **either** as the amount the insurance company agrees to pay for the loss of the vehicle, or the "retail" value for the vehicle in the National Auto Dealer's Association official used car guide – whichever is greater (i.e. whichever results in less coverage).  The other Pohanka Defendants all conspired in the sale of this phony GAP Agreement.  For example, the Invoice and the Buyer's Order for this transaction, which includes the $650 GAP charge, is in the name of the unincorporated "Pohanka Automotive Group," which includes all the Pohanka Defendants, and the Invoice and Buyer's Order specifically lists Pohanka Oldsmobile, Pohanka Isuzu, Pohanka Imports, Pohanka Hyundai, Pohanka Saturn of Marlow Heights, and Pohanka Used Cars on these transaction documents.  The Pohanka Defendants sought a purchaser-assignee of the financing contract for this transaction – including the illegal GAP Agreement - through Defendant Pohanka Hyundai, Inc., which shopped the financing transaction around to finance companies and negotiated the sale and assignment of the contract.

55.     In numerous other transactions – numbering in the hundreds or thousands – the Pohanka Automotive Group and its co-conspirators financed phony GAP Agreements in a similar manner.

56.     The Pohanka Automotive Group repeatedly undertook similar actions in the course of their conspiracy.   Each and every Pohanka Defendant took part in the sale and

financing of GAP Agreements to Class members in violation of CLEC, and directly sold illegal GAP Agreements to Class members in numerous similar transactions.  The details of many such transactions, however, are solely within the possession of Defendants.

57.     Similarly, Suntrust repeatedly purchased financing contracts under similar circumstances from the Pohanka Automotive Group and numerous other dealers, under which amounts were charged and collected for illegal GAP Agreements from Class members.  The details of many such transactions, however, are solely within the possession of Defendants.

58.     Notwithstanding Defendants' failure to comply with the mandatory terms of CLEC, the Pohanka Automotive Group and Suntrust have knowingly assessed, demanded and attempted to collect or have collected amounts from Named Plaintiffs and the Class in payment for illegally financed GAP Agreements, for which the borrowers were not liable as a matter of law.  The Pohanka Automotive Group and Suntrust also have conspired to collect and have collected and not returned to Named Plaintiffs and the Class interest, costs, fees and other charges which are uncollectible and must be forfeited on each credit contract due to the financing of the phony GAP Agreements. Unless and until this Court grants the declaratory and injunctive relief Plaintiffs seeks through this action, Defendants will continue to engage in business practices which violate Maryland law and which enrich them at the expense of Maryland borrowers.

59.     Each Credit Contract in the transactions of Plaintiffs and other Class members contains the following contract provision, required pursuant to Md. Code Ann., Com. L. §14-1302, and referred to hereinafter as the "Holder Notice":

**ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES**

**OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF.  RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

(Emphasis in original).

## CLASS ACTION ALLEGATIONS

60.      Named Plaintiffs brings this action on behalf of a Class which consists of:

> **All persons whose credit contracts (1) elect CLEC as governing law, (2) were either originated by the Pohanka Automotive Group or assigned to Suntrust after origination, and (3) include a charge for the cost of a phony GAP Agreement.**

Excluded from the Class are (a) those individuals who now are or have ever been executives of the Defendants and the spouses, parents, siblings and children of all such individuals, (b) any individuals against whom a judgment has been granted on the account at issue on or before the date of the filing of this Complaint, (c) any individual who was granted a discharge pursuant to the United States Bankruptcy Code or state receivership laws after the date of his or her Credit Contract; and (d) any individual otherwise obligated on a Credit Contract which was satisfied more than six months prior to the filing of this Complaint.

61.      The Class, as defined above, is identifiable.  The Named Plaintiffs are members of the Class.

62.      The Class consists, at a minimum, of several hundreds or thousands of persons who entered into credit contracts in which financed the cost of a GAP Agreement, and is thus so numerous that joinder of all members is clearly impracticable.

63.      There are questions of law and fact which are not only common to the Class but which predominate over any questions affecting only individual class members.  The common and predominating questions include, but are not limited to:

(a) Whether the GAP Agreement in question constitutes a debt cancellation agreement eligible for financing under CLEC;

(b) Whether Defendants violated CLEC by systematically utilizing phony GAP Agreements;

(c) Whether Defendants knowingly violated CLEC provisions by systematically utilizing phony GAP Agreements which failed to comply with Maryland law and therefore should be required to forfeit three times the amount of interest, fees and other charges collected in excess of those allowed by CLEC;

(d) Whether Defendants systematically misrepresented in writing that Plaintiffs and the Class were purchasing debt cancellation agreements of value, when the phony GAP Agreements they purchased had little or no value and in fact, could not lawfully be financed in credit contracts governed by CLEC;

(e) Whether Defendants systematically and unlawfully collected payments in connection with the financed sale of the phony GAP Agreements and benefitted financially from the illegal financing of these products

(f) Whether Defendants systematically breached the credit contracts each accepted for each Class member by failing to comply with Maryland law;

(g) Whether Defendants systematically assessed, attempted to collect and/or collected interest, costs, fees and other charges from members of the Class that they had no legal right to demand or collect, and for which the Class members were not liable;

(h) Whether the Defendants conspired between and among each other to commit the unlawful acts described herein, and are jointly and severally liable to Plaintiffs and the Class; and,

(i) Whether declaratory and injunctive relief is proper to prevent Defendants from continuing to finance or conspire to finance the sale of phony GAP Agreements in violation of Maryland law and to compel Defendants' compliance with Maryland law.

64. Claims of the Named Plaintiffs are typical of the claims of the respective members of the Class within the meaning of Fed. R. Civ. P. 23(a)(3), and are based on and arise out of similar facts.

65. The Named Plaintiffs are adequate representatives of the Class within the meaning of Fed. R. Civ. P. 23(a)(4). The Named Plaintiffs do not have a conflict of interest with members of the Class. Moreover, Named Plaintiffs are represented by Counsel who are experienced in class actions and will protect the interests of members of the Class.

66. The prosecution of separate actions by individual members of the Class would create a risk of establishing incompatible standards of conduct for Defendants, within the meaning of Fed. R. Civ. P. 23(b)(1)(A).

67. Defendants' actions are generally applicable to the respective Class as a whole, and Plaintiffs seeks equitable remedies with respect to the Class as a whole, within the meaning of Fed. R. Civ. P. 23(b)(2).

68. Common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy, within the meaning of Fed. R. Civ. P. 23(b)(3).

69. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

70. Plaintiffs' counsel are experienced in class actions, and foresee little difficulty in the management of this case as a class action.

## COUNT ONE – CREDIT GRANTOR CLOSED END CREDIT PROVISIONS

71.     Plaintiffs re-allege and incorporate by reference the foregoing allegations as if fully set forth herein.

72.     Maryland's Credit Grantor Closed End Credit Provisions, Md. Code Ann., Comm. L. §12-1001 *et seq.*, authorize credit grantors to provide closed end credit under certain circumstances and subject to certain limitations. Defendants are each "credit grantors" within the meaning of Md. Code Ann., Com. L. §12-1001(b).

73.     Md. Code Ann., Com. L.  §12-1005 regulates and limits the kind of charges and the amount of charges which Defendants may charge and which they may collect from their customers in connection with extensions of credit governed by this statute.  Charges which are not enumerated by §12-1005, other than interest, may not be charged in a CLEC transaction.

74.     Although Md. Code Ann., Com. L. §12-1005(c)(1)  authorizes credit grantors to finance the cost of true optional debt cancellation agreements, the phony GAP Agreement at issue is not  eligible for financing as a debt cancellation agreement under CLEC because it does not meet the definition of a debt cancellation agreement under the statute.

75.     In violation of Md. Code Ann., Com. L. §12-1005, Defendants charged and collected from Named Plaintiffs and the Class impermissible charges for the phony GAP Agreements – charges which are not permitted to be financed under CLEC.

76.     Defendants knowingly violated the provisions of Maryland's Credit Grantor Closed End Credit statute.

77.     Defendants conspired to prepare, Pohanka Automotive Group prepared and Suntrust and other credit grantors accepted assignment of, Retail Installment Contracts which

contained the unlawful charges and collected finance charges on the cost of phony GAP agreements which could not legitimately be financed under a credit contract governed by CLEC.

78.     Defendants conspired to violate CLEC and violated CLEC by originating or accepting assignment of and collecting on the Credit Contracts which contained charges for phony GAP Agreements that violated CLEC.  Defendants had knowledge of the contents of the phony GAP Agreements for which Plaintiffs and the Class were charged, and thus knowingly violated CLEC when accepting and collecting on the Credit Contracts of Plaintiffs and the Class.

79.     Defendants conspired with one another to engage in violations of CLEC by committing the acts described above, profiting by, assisting, supporting, facilitating and supplementing, instigating, advising, and encouraging the efforts of one another which violated the law.  Among other things, Pohanka Automotive Group prepared and financed the sale of phony GAP Agreements knowing the contents of the GAP Agreements, and Defendant Suntrust agreed to accept assignment of the Credit Contracts containing charges for the GAP Agreements also knowing the contents of the GAP Agreements.

80.     The Defendants aided and abetted one another in their illegal conduct set forth in this Complaint.  The Pohanka Defendants were each aware of, and possessed actual knowledge, about the wrongful and illegal direct actions of each of the other Pohanka Defendants in selling and financing of illegal GAP Agreements in the course of the scheme described herein.  Each of the Pohanka Defendants aided and abetted the wrongful and illegal direct actions of each of the other Pohanka Defendants in selling and financing the illegal GAP Agreements in the manner described herein, and knowingly provided substantial assistance, aid, and encouragement in the commission of that conduct by providing forms to the other dealerships for the sale of the illegal GAP Agreements, by agreeing on and encouraging the other dealerships to sell and finance the

illegal GAP Agreements, and by distributing the proceeds of their illegal scheme in selling and financing the illegal GAP Agreements to the other Pohanka Defendants.

81.     Suntrust was aware of, and possessed actual knowledge about, the wrongful and illegal direct actions of each of the Pohanka Defendants, from whom Suntrust purchased sale and financing contracts including illegal GAP Agreements.  Suntrust aided and abetted the wrongful and illegal actions of the Pohanka Defendants and knowingly provided substantial assistance, aid, and encouragement in the commission of that conduct by encouraging the sale of illegal GAP Agreements to Class members, by agreeing to purchase financing agreements which included the financing of illegal GAP Agreements, and by rewarding the Pohanka Defendants financially for selling and financing illegal GAP Agreements.

82.     Defendant Suntrust, and the other finance companies to whom the Pohanka Defendants assigned the Credit Contracts of Named Plaintiffs and the Class also are liable for the unlawful activities of the Pohanka Automotive Group pursuant to the Holder Notice in the Credit Contracts of Named Plaintiffs and the Class.

## COUNT TWO – BREACH OF CONTRACT

83.     Plaintiffs re-allege and incorporate by reference the foregoing allegations as if fully set forth herein.

84.     CLEC was in effect at the time the Plaintiffs' and Class members' credit contracts – including the financed purchase of the phony GAP Agreements - were originated.  The provisions of CLEC become part of the contracts just as if the parties expressly included the CLEC provisions in their credit contracts.  In addition, the contracts of Named Plaintiffs and other members of the Class explicitly refer to and, thus, incorporate the CLEC provisions as contract terms.

85.     When Defendants violated CLEC as set forth above, Defendants materially breached their contracts with Plaintiffs and the Class.

86.     As a result of Defendants' breaches of contract, Named Plaintiffs and members of the Class have been damaged.  Named Plaintiffs and members of the Class have been deprived of the substantial rights granted under CLEC, including the right to purchase a debt cancellation agreement of value without the risk of purchasing an illusory GAP Agreement, and the right to be free from charges not specifically authorized in the CLEC statute.  In addition, Named Plaintiffs and the Class also sustained financial damages as a result of Defendants' failure to return all of the interest, costs, fees and other charges collected on their loans, and Named Plaintiffs and the Class sustained other damages and losses including the amounts they paid for the illusory, phony debt cancellation agreements.

87.     Defendants conspired with one another to engage in their breaches of contract by committing the acts described above, profiting by, assisting, supporting, facilitating and supplementing, instigating, advising, and encouraging the efforts of one another which violated the law.

88.     Each of the Pohanka Defendants, and Suntrust, aided and abetted the wrongful and illegal actions of the other Defendants, and provided substantial assistance, aid, and encouragement in the commission of such conduct as set forth above.

89.     Defendant Suntrust is liable for the unlawful activities of the Pohanka Automotive Group pursuant to the Holder Notice in the Credit Contracts of Named Plaintiffs and the Class.

## COUNT THREE - DECLARATORY AND INJUNCTIVE RELIEF

90.     Plaintiffs re-allege and incorporate by reference the foregoing allegations as if fully set forth herein.

91.     This claim for declaratory relief is brought under the Maryland Declaratory Judgment Act, Md. Cts. & Jud. Pro. §3-406, to settle and obtain relief from uncertainty and insecurity with respect to the rights, status and legal relations under the credit contracts of the Named Plaintiffs and members of the Class and the consumer protections embodied in CLEC.

92.     Defendants maintain that the GAP Agreements are legitimate debt cancellation agreements which may be sold and financed in CLEC credit contracts.

93.     Named Plaintiffs and members of the Class have received or will receive collection notices from one or more Defendants and/or creditors or debt collectors demanding payment of amounts including amounts attributable to the sale of phony GAP Agreements Plaintiffs asserts could not be financed under CLEC or RISA, and payment of interest, costs, fees and other charges in connection with the Credit Contracts of Plaintiffs and the Class, which are not collectible due to the financing of the phony GAP Agreements.

94.     These practices continue and will continue unless and until this Court declares and affirms that Defendants may not collect any amounts attributable to phony debt cancellation agreements financed in the  credit contracts signed by Plaintiffs and the Class, and may not collect any interest, fees, costs or other charges in connection with their Credit Contracts.

95.     This presents an actual, judicable controversy between the parties relating to the construction of the credit contracts under which Defendants have sold or conspired to sell debt cancellation agreements ineligible for financing under CLEC,  and the application of CLEC to those contracts because Defendants have sought or likely will seek to collect on the amounts attributable to the sale of the GAP Agreements, or attributable to interest, costs, fees or other charges which may not be collected due to the Defendants' sale or conspiracy to sell  phony debt cancellation agreements which may not be financed under CLEC.

96.     Named Plaintiffs and members of the Class have a right to be free from Defendants' attempts to collect interest, fees, costs and other charges which are not collectible as a matter of law under their contracts.

97.     The benefits to Named Plaintiffs and members of the Class in obtaining an injunction outweigh any potential harm Defendants would incur as a result of an injunction, under the balance of the convenience test, as Defendants have no legal or contractual right to collect legally impermissible amounts from Named Plaintiffs and members of the Class, and Named Plaintiffs and members of the Class would greatly benefit from being relieved of Defendants' attempts to collect these illegal charges.

98.     Named Plaintiffs and members of the Class will suffer irreparable injury unless the requested injunctions are granted, as Defendants will continue to attempt to collect, and collect, interest, costs, fees and other charges from them in violation of the law.

99.     The public interest is best served by granting the requested injunctions, as the public has a compelling interest in preventing Defendants from violating the statutory and common law of the State of Maryland in the sale of GAP Agreements, and a compelling interest in seeing the laws of the State of Maryland obeyed.

100.     Named Plaintiffs and members of the Class are likely to succeed on the merits of this action, as CLEC does not permit the financing of the phony GAP Agreements at issue.

## COUNT FOUR - RESTITUTION AND UNJUST ENRICHMENT

101.     Plaintiffs re-allege and incorporate by reference the foregoing allegations as if fully set forth herein.

102.     By paying money attributable to the financing of  phony debt cancellation agreements that could not be financed under credit contracts governed by CLEC and paying

interest, fees, costs and other charges claimed by Defendants, Named Plaintiffs and members of the Class conferred a benefit of these illegally collected charges upon Defendants.

103.    Defendants accepted the benefits conferred upon them by Named Plaintiffs and members of the Class when they accepted the money paid, including interest, costs, fees and other charges, toward illegally financed phony debt cancellation agreements.   Further, Defendants were aware of, and had knowledge of, the benefits conferred on them, as they demanded those benefits.

104.    Defendants' collection, acceptance and retention of these charges, when Defendants were not entitled to the charges as a matter of law, is and was and continues to be unjust and inequitable, and Defendants have not refunded the charges to Named Plaintiffs and members of the Class.  Defendants should not be permitted to retain the benefits of those illegal charges.

105.    Defendants' continued collection and withholding of the illegal charges is improper.

106.    Named Plaintiffs and members of the Class conferred these unjust benefits upon Defendants after and as a result of Defendants' misconduct as set forth herein.

107.    Defendants conspired with one another to unjustly enrich themselves by committing the acts described above, profiting by, assisting, supporting, facilitating and supplementing, instigating, advising, and encouraging the efforts of one another which violated the law.

108.    Each of the Pohanka Defendants, and Suntrust, aided and abetted the wrongful and illegal actions of the other Defendants, and provided substantial assistance, aid, and encouragement in the commission of such conduct as set forth above.

109.     Defendant Suntrust is liable for the unlawful activities of the Pohanka Automotive Group pursuant to the Holder Notice in the Credit Contracts of Named Plaintiffs and the Class.

WHEREFORE, Plaintiffs request:

A.     certification of this action as a class action pursuant to Fed. R. Civ. P. 23;

B.     a declaratory judgment establishing that Defendants may not collect any interest, fees, costs or other non-principal charges on a loan account of Named Plaintiffs and members of the Class;

C.     a preliminary and permanent injunction prohibiting Defendants from collecting or attempting to collect interest, fees, costs or other non-principal charges from Named Plaintiffs and members of the Class;

D.     payment by Defendants to Named Plaintiffs and members of the Class the statutory civil penalties imposed by CLEC, Md. Code Ann., Com. L. §12-1018(a)(2), including the return of all sums each paid as interest, costs, fees or other non-principal charges;

E.     pursuant to Md. Code Ann., Com. L. §12-1018(b), payment by Defendants to Named Plaintiffs and members of the Class an amount equal to three times the interest, costs, fees, and other charges which Defendants collected in excess of that allowed by CLEC;

F.     payment by Defendants to Named Plaintiffs and members of the Class of all sums paid toward  phony debt cancellation agreements not eligible for financing under CLEC, plus interest, fees, costs and other non-principal charges;

G.     judgment in favor of Named Plaintiffs and the Class against Defendants for such compensatory damages as the evidence shall warrant;

H.      pre-judgment and post-judgment interest on all sums awarded to Named Plaintiffs

        and members of the Class;

I.      reasonable counsel fees and the costs of these proceedings; and,

J.      such other and further relief as the nature of this case may require.

                                    Respectfully submitted,

                                    /s/Richard S. Gordon
                                    Richard S. Gordon, Bar No. 06882
                                    Martin E. Wolf, Bar No. 09425
                                    Benjamin H. Carney, Bar No. 27984
                                    GORDON & WOLF, CHTD.
                                    102 W. Pennsylvania Ave., Ste. 402
                                    Towson, Maryland 21204
                                    (410) 825-2300

                                    Mark H. Steinbach, Bar No. 26538
                                    O'TOOLE, ROTHWELL, NASSAU & STEINBACH
                                    1350 Connecticut Avenue, N.W., Ste 200
                                    Washington, D.C. 20036
                                    (202) 775-1550

                                    Robert K. Jenner, Bar No. 04165
                                    Justin A. Browne, Bar No. 29164
                                    Sam M. Collings
                                    JANET, JENNER & SUGGS, LLC
                                    1777 Reisterstown Road, Ste. 165
                                    Baltimore, Maryland 21208
                                    (410) 653-3200

                                    ATTORNEYS FOR PLAINTIFFS AND THE CLASS

## **JURY TRIAL**

Plaintiffs demands trial by jury.

/s/Richard S. Gordon
Richard S. Gordon